UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CROMER,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL SONGER, et al.,<br><br>  Defendants. | Case No.: 1:15-cv-01742-SAB (PC)<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>[ECF No. 1] |

Plaintiff Charles Cromer is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1] Currently before the Court is Plaintiff's complaint, filed November 18, 2015.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

---

[1] Plaintiff consented to magistrate judge jurisdiction on December 3, 2015. (ECF No. 4.)

1

monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff suffers from renal failure and receives peritoneal dialysis. Plaintiff names Michael Songer (Chief Medical Officer), R. Varanasi (Doctor), Martha Trevino (Registered Nurse), and Bernard Ramos (Doctor), Soe Htay (Doctor), O. Kamson (Licensed Vocational Nurse) and Brock Sheela (Nurse Practitioner), as Defendants.

On April 16, 2013, Angela Regaldo (Registered Nurse at Los Angeles County Sheriff's Department) contacted Martha Trevino and inquired if Wasco could provide peritoneal dialysis (PD) for an inmate needing PD treatment four times a day. Trevino assured Angela Regaldo that Plaintiff would receive PD at Wasco's onsite dialysis center.

On April 22, 2013, Plaintiff was transported to Wasco, and the intake nurse told Plaintiff that the California Department of Corrections and Rehabilitation (CDCR) does not provide peritoneal dialysis and Plaintiff would be sent to a hospital to have surgery to transition from PD to hemodialysis. Plaintiff refused the surgery because he does not do well under anesthesia medications. Michael Songer, Martha Trevino, along with others knew that Plaintiff would never receive PD if transferred from the Los County Jail.

On April 23, 2013, Plaintiff suffered complications related to not receiving PD and was transferred to an outside hospital.

On May 2, 2013, Plaintiff was seen by Doctor Bernard Ramos who refused to order daily PD. On May 3, 2013, Plaintiff was rushed to an outside hospital for complications due to not receiving PD. On May 8, 2013, Plaintiff was rushed to an outside hospital for complications related to not receiving PD. On May 10, 2013, Plaintiff was seen by Brock Sheela who refused to order daily PD. On May 19, 2013, a request for medical services was submitted by a nurse because Plaintiff was suffering complications due to not receiving PD. On May 20, 2013, Plaintiff was rushed to an outside hospital due to complications related to not receiving PD. While at the hospital, Doctors Ahmed and Muvin did not want to send Plaintiff back to Wasco because they knew Plaintiff would not receive PD.

On June 5, 2013, Plaintiff was rushed to an outside hospital for complications related to not receiving PD; however, Doctor Bernard Ramos refused to order life sustaining daily PD. On June 11, 2013, Plaintiff was evaluated by Brock Sheela was refused to order daily PD. On June 17, 2013, Plaintiff submitted a CDCR 7362 form informing medical staff that Plaintiff had not received PD for three weeks.

On July 26, 2013, Plaintiff was rushed to an outside hospital by Doctor Soe Htay for not receiving PD; however, no daily PD was ordered.

On July 31, 2013, as a result of not receiving daily PD and cleaning the access site, Plaintiff developed an infection "peritonitis."

On August 9, 2013, Plaintiff was sent to an outside hospital for complications relating to not receiving PD. On this date, Plaintiff underwent some type of procedure related to not receiving PD. On August 10, 2013, Dr. Soe Htay authorized surgery to transform Plaintiff from PD to hemodialysis.

Plaintiff had to be resuscitated three times during surgery and suffered pain and psychotic episode. Plaintiff had a right not to have surgery and was told by Brock Sheela that Plaintiff was not sent for dialysis on a daily basis because Plaintiff was costing the State too much money going back and forth to the hospital for PD.  Plaintiff is gravely disabled due to receiving hemodialysis three times a week.

As retaliation for not agreeing to have surgery to transition from PD to hemodialysis, Defendants Doctor Michael Songer, Doctor Soe Htay, R. Varinasi, and Bernard Ramos refused to send Plaintiff out or provide daily life sustaining PD treatment.

On May 9, 2013, PD was refused for nine days.  From June 22, 2013 to July 26, 2013, no PD was provided.  Then again from  August 1, 2013 to August 9, 2013, no PD was provided.

On May 10, 2013, Defendant Brock Sheela told Plaintiff, "I've spoken to Michael Songer, R. Varinasi Soe Htay and Bernard Ramos and they all said you were costing the state too much money going back and forth to the hospital for dialysis, when all you have to do is have the surgery." Defendant Brock Sheela was ordered to watch Plaintiff's labs and when the labs got out of range Plaintiff would be sent out for PD.

On April 2, 2015, licensed vocational nurses O. Kamson and Parentala went to Plaintiff's cell to administer a finger stick and insulin shot.  Prior dealings with Kamson were extremely painful so Plaintiff requested he do it himself.  Kamson became very hostile and angry and stated, "Ok you refuse, if you won't allow me to give it then you won't get it."  Later Parentala allowed Plaintiff to perform the finger stick and insulin shot.

On April 19, 2015, Plaintiff was approved by Kamson and Parentala, and Kamson once again attempted to give a finger stick and shot, Plaintiff would not allow him to do.  Kamson stated "you refuse" while slamming his kart down and walked away.  Later that day, Kamson wrote a rules violation report stating that Plaintiff attempted to assault him with a hot bowl of soup.  Officer Wills and licensed vocational nurse Parentala told the senior hearing officer that Plaintiff made no such gestures toward Kamson, and the rules violation was dismissed.  Kamson later told Plaintiff "I would have whipped you like you never been whipped befor[e]."

On April 22, 2015, Kamson attempted to give Plaintiff a Benadryl shot, and when Plaintiff refused Kamson refused to allow him or registered nurse Enduritu to give the shot.

On May 11, 2015, Kamson went to Plaintiff's cell and stated, "you think you got away, I'm gonna get you," Plaintiff began to yell for the officer, but registered nurse Aungst came and asked what was the problem. Kamson attempted to close the door but Aungst held it open and asked if there was a problem. Kamson stated, "He doesn't want to take his medications from me." Aungst told Kamson to hand her the medication and she would give them to Plaintiff. Kamson stated, I don't have them you have to go to the medication room and pull them."

On October 31, 2015, Kamson went to Plaintiff's cell and banged on the door stating, "I got your medications but you aren't getting them." Plaintiff wrote the medical board, nursing board, filed a staff complaint, and a government complaint relating to Kamson's conduct.

## III.

## DISCUSSION

### A.  Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

  1.  Allegations Relating to Dialysis Treatment

Based on Plaintiff's allegations, Plaintiff's condition, renal failure, is a serious medical condition and the failure to properly treat that condition could result in further significant injury or

1 inflict unnecessary pain and suffering.  However, Plaintiff must still demonstrate that one or more of
2 the Defendants denied him necessary treatment, and he suffered further significant injury, or was
3 subjected to unnecessary pain and suffering as a result.

4       Plaintiff contends that Defendants were deliberately indifferent by transferring him from the
5 Los Angeles County Jail to the California State Prison in Wasco; however, the fact that Plaintiff was
6 transferred to Wasco prison which does not provide peritoneal dialysis at the facility does not alone
7 give rise to a level of a constitutional violation.  Plaintiff essentially argues that his rights under the
8 Eighth Amendment were violated because he did not receive daily PD treatment at the prison facility
9 in which he was housed.  Although the Constitutional mandates that the State provide a prisoner
10 adequate medical treatment, such right does not equate to entitlement to receive medical treatment in
11 the same facility as the inmate is housed.

12       In addition, "[a] difference of opinion between a physician and the prisoner - or between
13 medical professionals - concerning what medical care is appropriate does not amount to deliberate
14 indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d
15 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-
16 83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v.
17 McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment
18 the doctors chose was medically unacceptable under the circumstances and that the defendants chose
19 this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing
20 Jackson, 90 F.3d at 332) (internal quotation marks omitted).  Thus, Plaintiff's claim that he did not
21 agree with the doctor's recommendation to have surgery does not give to a constitutional violation.
22 Plaintiff cannot demonstrate deliberate indifference to serious medical needs by refusal of
23 recommended and offered treatment.  Further, Plaintiff has not alleged sufficient facts to demonstrate
24 that the surgery and hemodialysis treatment constituted deliberate indifference.  The fact that monetary
25 concerns played into the equation does not, alone, demonstrate such treatment was deliberate
26 indifference.  In any event, the exhibits attached to Plaintiff's complaint demonstrate that Plaintiff
27 received ongoing, extensive care and treatment for his condition.  Plaintiff presents only a vague
28 allegation that he is gravely disabled from receiving hemodialysis three times a week.  Thus, there is

insufficient factual support to support the finding that the treatment decisions have been based solely upon financial concerns.  Furthermore, there are not sufficient facts to support Plaintiff's allegation that he was denied daily PD treatment in retaliation for refusing surgery.  To the contrary, Plaintiff was provided repeated and continuous PD treatment, although not at Wasco State Prison but at an outside facility.  Any errors in the recommended treatment and/or medical determinations, do not amount to a claim of deliberate indifferent.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (an Eighth Amendment claim may not be premised on even gross negligence by a physician). In conclusion, Plaintiff's complaints relating to not receiving daily PD treatment are vague and conclusory (and not supported by the exhibits attached to his complaint),[2] and fail to support a claim for deliberate indifference against any of the named Defendants.

        2.        Allegations Against Defendant Kamson

Plaintiff's allegations against Defendant Kamson fail to give rise to a cognizable claim for deliberate indifference.  Plaintiff acknowledges that he refused the finger stick and insulin shot to be administered by Defendant Kamson.  The only justification provided for the refusal of administration by licensed vocational nurse Kamson is that prior dealings were "extremely painful."  Plaintiff fails to present sufficient factual support to demonstrate that Kamson was "deliberately indifferent" to his serious medical needs.  Although Plaintiff contends that on October 31, 2015, Kamson told him I have your medications but you are not getting them, is insufficient, alone, to give rise to a claim of "deliberate indifference."  The facts as alleged simply do not give rise to a claim for deliberate indifference against Defendant Kamson.

## IV.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted.  Plaintiff is granted leave to file an amended complaint within thirty (30) days.  Noll v.

---

[2] In determining whether a complaint states a cognizable claim for relief, the Court may consider materials attached as exhibits to the complaint and incorporated therein.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); City of Fresno v. U.S., 709 F. Supp. 2d 888, 912 n.21 (E.D. Cal. 2010).

Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff an amended civil rights complaint form;
2. Plaintiff's complaint, filed November 18, 2015, is dismissed for failure to state a claim;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

///
///
///
///
///
///
///

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: **February 8, 2016**

UNITED STATES MAGISTRATE JUDGE